Meddaugh v. Matthews is our next case for argument this morning. Ms. Zellner. Good morning. May it please the court, my name is Kylie Zellner and I represent Deputy John Matthews in this interlocutory appeal. At the heart of this appeal is a straightforward legal question. Did clearly established law in April of 2020 put Deputy Matthews on notice? My first question is appellate jurisdiction. I want to be sure I understand whether you are contesting the district court's decision that the excessive force issue has to go to trial. We are not. You're not. So your client is going to stand trial no matter what happens in this appeal. That is correct. Doesn't that raise the question whether we have jurisdiction? How is the district court's decision to hold a trial final when you're not contesting the decision to hold a trial? I don't have an issue with the district court deciding to hold a trial on a case that we were denied summary judgment on. The issue here is that qualified immunity protects an officer like Deputy Matthews. The reason the Supreme Court says the reason for qualified immunity is to spare defendants the burdens of discovery and trial. But there is discovery, there has been discovery and there will be a trial. Why shouldn't this issue await the outcome of the trial? The other way to put this is the district judge initially granted your client immunity on this question and then took it back and said since there has to be a trial, I'm just leaving this up in the air. I'm not deciding it at all. Why doesn't that counsel against appellate jurisdiction? Because the whole purpose of qualified immunity is to prevent people from having unnecessary trials. But we agree there will be a trial. That's correct, but the scope of the trial will certainly be different. This would put before a jury the question of whether... Suppose I ask you a concrete question. In any of the Supreme Court's qualified immunity appeals, have we had a situation where there was going to be a trial no matter what happened in that appeal, where the appellant was going to be tried on the merits, no matter what? I believe that is a very common occurrence. I don't know that I can cite to a... Asking about the Supreme Court's decisions, maybe there is one, but none comes to mind. One does not come to mind for me either. But I will say that this is a very common occurrence in district courts where qualified immunity is granted on some of the claims and not all of them. And those cases still go to trial on the remaining claims. You're not... That's not the question I am asking. You are not contesting the district court's decision to deny your client's request for qualified immunity on the excessive force claim. And so no matter what happens on this appeal, your client must show up for trial in district court. The question I'm asking is whether we have appellate jurisdiction when no matter what happens, the appellant must undergo a trial. That's the question. Well, I think the distinction is the fact that there would be a larger scope to the trial. The jury would be put to the question of whether or not the initial stop was legal. And the jury can't make a determination on qualified immunity. Only the court can. And so this would create a situation where essentially anytime qualified immunity isn't granted as to one of the claims, there has to be a trial on all of the claims. You're just not responding to the question. Why don't you proceed? The district court... This case is unique in the fact that the district court originally found that Deputy Matthews had arguable reasonable sufficient under Terry v. Ohio and granted him qualified immunity on this specific issue. It later reversed its course without citing controlling precedent that squarely governs the facts of this case. And not only is that reversal legally unsupported, but the fact that the district court initially granted qualified immunity is compelling evidence that the right, in fact, was not clearly established. Ms. Elner, before you go too much further, I want to ask another question regarding appellate jurisdiction. For purposes of this appeal, are you contesting that the initial stop, which is what's at issue here, was a Terry stop? We are not. And are you contesting at all that Mr. Meadow, at that initial stop, continued to peddle at a normal pace as opposed to quickly and running away or peddling away? Your Honor, we are not. We are accepting those facts as true for purposes of this appeal.  The point in regards to the district court changing its opinion in this case is that if a district court judge, with the benefit of summary judgment briefing, in time to decide this very question, can question the legality of Deputy Matthews' Terry stop, how can we require more from a reasonable officer in the moment? As this court is well aware, qualified immunity protects all but the clearly incompetent or those who knowingly violate the law. There is no controlling or closely analogous case law from this court or the Supreme Court that would have informed a reasonable officer that these specific facts rendered the stop unlawful. And to be clear, to be clearly established, it must be defined with specific… What's the law that a reasonable officer would think he was violating? In this particular case, it was an ordinance violation for loitering on school grounds between the hours of 11 p.m. and 6 o'clock a.m. And there's no allegation that he was stopped. He was riding his bike through there. How would that reasonably qualify for loitering? Well, I think that the district court gave a definition which basically stated that it would be being in a location that a normal law-abiding citizen would not have been at during that time or in that manner. But he's not stopped there. Loitering suggests you're in a place where you're not allowed to be and you're hanging around. There's nothing viewing the facts as we must in the plaintiff's favor. What suggests he was staying there? I don't think that there is anything to suggest that he was staying there. I think that the ordinance includes not only loitering but also loafing, which, again, I think is being in a location without a particular purpose. And I think that the fact that this was at 2 a.m. outside of a closed elementary school, and, again, he doesn't have to see evidence that he actually violated this ordinance. If it's reasonable to assume that he may have previously been stopped at those grounds or was going to stop at those grounds, that would also be a basis for a Terry stop in this case. Another compelling circumstance in this case that I would like to point out is that Deputy Matthews did not immediately seize Mr. Mehta. Rather, he used a spotlight and verbal commands to try to get him to stop, and only when Mr. Mehta presumably refused to comply with those commands did Deputy Matthews actually conduct the Terry stop. And I think that this is important because the district court, in its original summary judgment decision, made it very clear that this particular circumstance made the case law far less clear on this issue. And if the case law is not clear, qualified immunity should apply. And I would reserve the rest of my time for rebuttal. Thank you. Certainly, counsel. Ms. Goldman. Good morning. May it please the court, my name is Lisa Goldman, and I represent the Appalachia Meadow. This court lacks jurisdiction to review the district court's denial of qualified immunity because there are material facts in dispute and because there's going to be a trial anyway, as Judge Easterbrook pointed out. The correct standard of review to apply is de novo in reviewing the district court's decisions on qualified immunity. This court should deny Matthews' interlocutory appeal for two reasons. First, the district court already determined material facts are in dispute about whether the initial encounter was a voluntary encounter or a Terry stop. Second, assuming this was an impermissible Terry stop, this court should dismiss Matthews' appeal because it was already clearly established that an officer cannot execute a Terry stop without reasonable suspicion of criminal activity, and because Matthews already conceded there was no evidence of criminal activity, he's not entitled to qualified immunity. First, the district court- What's the factual dispute that would preclude appellate court jurisdiction given Mr. Matthews' concession for purposes of appeal? Matthews- so that brings me to my first point. Meadow initially argued before the court below that Matthews executed an unlawful Terry stop because the state conceded it was a Terry stop in the Wisconsin Court of Appeals criminal appeal. But Matthews, in response to Meadows' motion for partial summary judgment on the stop, asserted two defenses. First, he asserted it was a voluntary encounter. But he's now saying, for purposes of appeal, that it was a Terry stop. Yes, he is saying- So what's the factual dispute? The factual dispute consists of- What's the factual dispute that would preclude jurisdiction? You started your argument by saying that the court didn't have jurisdiction because of factual disputes, and that's certainly what the law says. One of those factual disputes you identified was whether or not this was a Terry stop. But counsel has conceded, for purposes of appeal, that this was a Terry stop. Some of the factual disputes include whether Matthews pulled up alongside Meadow or whether he blocked his path forcing him off of his bike, whether Meadow biked away from the school at a normal pace or quickly to get away from Matthews. They've conceded that, that it was a normal pace. Sure. Whether Meadow rode straight through the parking lot in a north-south direction or did he- Matthews asserted in their initial argument that he was loitering or loafing, but there's no evidence he was loitering or loafing. And Meadow has repeatedly asserted he rode straight through the parking lot from 7th Street North to 7th Street South. If you look at the picture in my brief, you'll see that 7th Street North is connected to 7th Street South by a straight line, which runs straight through the parking lot of the school. Whether Matthews yelled stop or not and whether Meadow heard him if he did yell, because we have no body cam footage, Meadow is- Why is any of those things relevant to the validity of a Terry stop? Well, the validity- the stop wasn't valid because at no point has Matthews ever argued why he stopped and what criminal conduct he suspected. He didn't argue it in the district court. He didn't argue it in this court. And frankly, the state didn't argue it in the criminal appeals court. We have a stop that's based on a hunch. We don't have a stop that's based on criminal conduct that's alleged. That sounds like an argument that Matthews loses, not like an argument that there's no appellate jurisdiction. Correct. What I've argued in this case, Your Honor, are twofold. One, that this court lacks jurisdiction because there are disputed issues of fact and no questions of law. Right, but that's what we're trying to pursue. You didn't make the jurisdictional argument that I raised with Ms. Zellner. I raised it in my subsequent jurisdictional statement that the court requested, that there's going to be a trial anyway, so why are they entitled to an interlocutory appeal? And you raised a very good point because at trial the court- Well, do you know any Supreme Court decisions on that point? I do not, Your Honor, and I looked for them, but I could not find any. But in this particular case, it's particularly true because at trial the court has already determined that the totality of the circumstances require that he allow evidence of the full encounter, which includes the basis of the stop. So the only additional burden on Matthews for trial is the jury instructions for the stop and- But I don't think the court concluded that would come in regardless of the results of the appeal. Well, I think the court asked for direction from this court, actually. Right, right. I think the court said that would come in when the judge reversed the position on whether or not qualified immunity appealed in the first place. I'm sorry, I don't understand your question. You've made an argument that it's going to trial and all this evidence about the initial stop is coming in. The court has said that. My point is the court said that when it reversed its position on qualified immunity. I did not read the court's ruling to say even if qualified immunity protects that initial stop, all this evidence is coming in as well. My understanding is the court was going to allow all that evidence based on the first pretrial conference, but I don't have that transcript before me to give you a citation of that. But that's my understanding. I'm the attorney in the trial court level as well, and my understanding is that it's all... Do you think Barnes v. Felix affects that question? I don't think Barnes v. Felix is appropriate in this case, and I actually think Taylor v. Schwartzhuber, which this court decided... I'm asking you to address Barnes v. Felix. Barnes v. Felix seems to say that in any excessive force claim, the whole structure of the incident is relevant and must be considered. Correct. That's what the U.S. Supreme Court stated in Barnes v. Felix. And what this court... And that suggests that the result of this appeal won't matter to the evidence at trial. That's correct, because all the evidence of the totality of circumstances is coming in. It's not just at the moment, and the Barnes v. Felix case was in regard to, I believe, the Fifth Circuit, which had a different test for the shooting as to whether it was the totality of circumstances or the moment of the incident. But the Seventh Circuit has always been the totality of the circumstances. So, again, Taylor v. Schwartzhuber, which this court decided just this year, the court reiterated that the government bears the burden of demonstrating some minimal level of objective justification for making a stop by a preponderance of the evidence. And in this case, Matthews has even missed that basic bar of what was the basis for the stop. What crime was he suspicious of based on the fact that Meadow was riding a bike at 12.39 a.m., wearing dark clothing on a fully lit bicycle, heading from 7th Street North to 7th Street South through the most direct route available. So, in conclusion, this court should dismiss Matthews' interlocutory appeal for lack of jurisdiction. Alternatively, this court should dismiss Matthews' interlocutory appeal and deny him qualified immunity for an unlawful terrorist act where he conceded he did not have any evidence of criminal conduct. There's no further questions. I'll sit down. Thank you, Ms. Goldman. Thank you, Your Honor. Anything further, Ms. Zellner? With my rebuttal time, I wanted to first address the fact that, again, the circumstances that were articulated by Deputy Matthews in this case were that he observed an individual wearing all black clothing, biking behind an elementary school at 12.39 a.m. during a COVID lockdown, who refused to stop after he was spotlighted by a squad car. Those are the factors that caused him to conduct the Terry stop. And, again, the ordinance violation was his initial basis for that. I want to also point out in this case regarding the questions about whether or not a trial has to take place anyways, I want to be very clear that in this case, there were essentially three different claims here. There was the initial stop, there was the arrest, and there was the excessive force claim. The court has already decided that the arrest will not go to the jury. Whether or not that was an appropriate arrest, the district court found that there was probable cause for that arrest. What we are asking here from this court is for the same thing to be true regarding the stop, that qualified immunity. Do you want to discuss the effect of barns? I will admit that I believe that portions of this stop and arrest will come into play during a trial on excessive force. But I think that there's a distinction between those facts coming into trial versus that issue going to a jury to be cited by the jury. There's other considerations here. An individual, knowing that he only has an excessive force claim remaining, could choose to forego a trial and settle the case. The motions in limine that are going to be allowed in a case are going to determine what is relevant to the claims before the jury. These are issues that will, in fact, affect the trial and the scope of the trial, and district courts should grant qualified immunity where it applies. Thank you. Thank you, counsel. The case is taken under advisement.